**Joann P. EDWARDS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. CIV.A. 03–G–2423–S.**

United States District Court, N.D. Alabama, Southern Division.

May 24, 2004.

ty that Defendant could be found to have aided and abetted in the violation of an un-

Darryl W. Hunt, Clark & James LLC, Birmingham, AL, for Joann P Edwards, plaintiff.

Alice H. Martin, U.S. Attorney, Lane H. Woodke, U.S. Attorney's Office, Birmingham, Mary Ann Sloan, Social Security Administration–Office of General Counsel, Atlanta, GA, for Jo Anne B Barnhart, Commissioner of Social Security Administration, defendant.

constitutional, as-applied, statute.

## MEMORANDUM OPINION

GUIN, District Judge.

Plaintiff brings this action pursuant to the provisions of section 205(g) of the Social Security Act, [hereinafter the Act], 42 U.S.C. § 405(g),[1] seeking judicial review of a final adverse decision of the Commissioner of Social Security [hereinafter Commissioner]. Application for a period of disability and disability insurance benefits under sections 216(i) and 223 of the Social Security Act, as amended, was filed March 1, 2000, as was an application for SSI as provided under Section 1601 of the Act, 42 U.S.C. §§ 1381 *et seq.* These applications were denied initially and upon reconsideration. Request for a hearing before an administrative law judge [hereinafter ALJ] [Jerome L. Munford] was granted, and a hearing was held April 17, 2001. The ALJ's decision to deny benefits was handed down June 27, 2001. Plaintiff's request for review by the Appeals Council was denied July 31, 2001. An appeal to this court followed.

Plaintiff is a 47 year old female with a high school education.[2] Past relevant work is as a housekeeper, sheet hanger,[3] and fish scaler. She last worked February 27, 2000, due to chronic back problems, including severe pain, neuropathy in her right leg, and breast pain.[4]

Plaintiff's pain is in her back, buttocks, and leg. In describing her pain she says her leg hurts all the time and locks up a couple of times a day because of muscle spasms. She is uncomfortable lying down because of the swelling in her back. She has problems sitting and must use a pillow when doing so. She squirms when sitting. She can sit for a period of about 30 minutes before having to move around. She can stand about 30 minutes and estimates she can walk half a block. She lifts nothing heavier than a gallon of milk. Because of falls she uses a cane and wears a boot she wore for a broken foot.[5] Ms. Edwards rates her daily pain at a nine/ten on a scale of ten. When the effects of the pain medication take effect her pain is about a seven.

During the day plaintiff finds it necessary to lie down five to six hours. She is drowsy and sleepy because of the medication she takes: Lortab;[6] Hydrocodone;[7] and Neurontin.[8] The television runs constantly. When she is not sleeping she

---

1. 42 U.S.C. § 1383(c)(3) renders the judicial provisions of 42 U.S.C. § 405(g) fully applicable to claims for Supplemental Security Income [hereinafter SSI].

2. Plaintiff attended special education classes.

3. She hung sheets in the Marriott laundry.

4. Plaintiff has had two breast surgeries.

5. The boot was prescribed when she broke her foot over a year ago. Plaintiff continues to wear the boot, saying it provides stability and keeps her from falling.

6. Lortab tablets are indicated for the relief of moderate to moderately severe pain. The most frequently reported adverse reactions are lightheadedness, dizziness, sedation, nausea and vomiting. These effects seem to be more prominent in ambulatory than in nonambulatory patients. *Physicians' Desk Refer-*

*ence,* (Medical Economics Company, Inc., Inc. 56rd ed 2002) [hereinafter PDR].

7. Hydrocodone is indicated for the relief of moderate to moderately severe pain. PDR.

8. Neurontin, an epilepsy medication, is used with *other medications to treat partial sei-zures* (the type in which symptoms are limited). It may be prescribed whether or not the seizures eventually become general and result in loss of consciousness. More common side effects may include blurred, dimmed, or double vision; dizziness; drowsiness; fatigue; involuntary eye movement; itchy, runny nose; lack of muscle coordination; nausea; tremor; and vomiting. "Neurontin," *at* http://www.healthsquare.com/newrx/NEU 1289.HTM (September 11, 2002).

Neurontin is used in lower doses for treatment of pain. It is used to relieve the burn-

watches it. She does no housework.[9] Her niece takes her to the grocery store. Plaintiff does not drive.

The record shows that plaintiff's treating internist Dr. Chi–Tsou Huang ordered an MRI. Results showed spinal stenosis at L4–5 and evidence of a disk herniation at L4–5 to the right of the midline with compression of the S1 nerve root. Dr. Huang referred plaintiff to neurosurgeon Christopher Paramore.

Dr. Paramore found claimant's gait antalgic to the right and a positive straight leg raise on the right at about 80 degrees. She had tenderness on the right side. The MRI showed large free fragment disk herniation at L4–5 on the right side which had migrated out the foramen. His assessment was right lumbar radiculopathy with HNP. He discussed surgery with her. On February 16,2000, Dr. Paramore performed a right L5–S1 microdiskectomy.

Dr. Paramore examined plaintiff March 31, 2000, approximately six weeks following surgery. Plaintiff reported her pain had not improved. She was having a fair amount of burning in the right foot radiating up the calf, but no radicular pain. She reported having a fair amount of back pain. Significant weakness in both plantar and dorsiflexion was similar to pre-operation. Dr. Paramore's notes include the following conclusion: "Obviously, the surgery does not appear to have helped." He prescribed Neurontin and referred her to physical therapy.

Dr. Huang has continued to treat plaintiff for her pain. His notes of September 25, 2000,[10] indicate she was seen at Spain Rehabilitation Center on several occasions. He observed her pain was not getting better and referred her to the Kirklin Pain Clinic Treatment Center where a nerve block by Dr. Anne Still was scheduled for the next Friday.

Dr. Still first evaluated Ms. Edwards May 17, 2000. At that time claimant had right lower extremity pain, loss of strength and loss of feeling. The doctor's conclusion follows:

Interval right hemilaminectomy at L4–5, with relatively extensive post-surgical fibrosis [11] to the right of the thecal sac and filling the right lateral recess at this level. There is recurrent or residual broad-based disc protrusion into the right intervertebral foramen at the level, which is causing intervertebral foraminal stenosis which is somewhat worse than on prior study.[12]

---

ing nerve pain that sometimes persists for months or even years after an attack of shingles. Side effects when taken for nerve pain may include accidental injury, constipation, diarrhea, dizziness, drowsiness, dry mouth, headache, infection, lack of muscular coordination, nausea, swelling in arms and legs, vomiting, weakness. If taken with certain other drugs (Maalox; Hydrocodone (Lortab, Vicodin); Naproxen; Morphine) the effects of either can be increased, decreased, or altered. *Neurontin, available at* http://www.healthsquare.com/newrx/NEU1289.HTM (last visited May 20, 2004).

9. Her children and sister do the housework.

10. In an August 21, 2000, letter addressed "TO WHOM IT MAY CONCERN" Dr. Huang wrote that plaintiff has been followed at the outpatient clinic at Spain since December 6, 1999. He opined plaintiff had been **unable to work** at her usual occupation since December 17, 1999, and that the condition causing her inability to work was **indefinite**.

11. Fibrosis is the formation of connective fibrous tissue in an organ. Http:www.ilpi.com/msds/ref/fibrosis.html (visited May 21, 2004).

12. A MR(sic) lumbar spine was performed May 17, 2000. Dr. Still's evaluation is based on examination and comparison of the findings to an earlier MRI. A portion of her report reads as follows:

Technique: T1–weighted and fast T2–weighted images of the lumbar spine were obtained in sagittal and axial planes, utiliz-

On a follow-up visit to Dr. Still on July 7, 2000, plaintiff's chief complaint was bilateral lower back pain with burning in right posterior thigh and right lower extremity pain as well as right lower extremity numbness in right foot. Examination showed plaintiff's gait to be antalgic. She was using a cane to walk. The spine had decreased range of motion secondary to pain. She had global tenderness to palpation in the lumbosacral paraspinous muscles and positive tenderness to palpation along the superior posterior iliac crest area. She had pain in the paraspinous and buttock areas on each side. Straight leg raise in the supine position was positive on the right. Sr. Still's impression follows:

## DIAGNOSTIC IMPRESSION

1. Chronic low back and right leg pain.
2. Post lumbar laminectomy syndrome with scarring at L5.

3. Lumbar radiculopathy.
4. Lumbar spondylolisthesis at L4–L5 with foraminal stenosis.
5. MPS.[13]

Dr. Still's recommendation were use of Neurontin, Skelaxin,[14] Naprosyn,[15] and Ultram[16] and review of the MRI.

In a consultative examination performed by Dr. Lois Schulman[17] on May 23, 2000, at the request of the Administration, Dr. Schulman found decreased pinprick in the lower extremity on the right side up to the thigh. Her assessment was right-sided lower extremity discomfort and weakness with sensory abnormalities and peripheral neuropathy. Her functional assessment of plaintiff follows:

**FUNCTIONAL ASSESSMENT:** The number of hours the claimant could be expected to stand and walk in an eight-hour workday with normal breaks is 2–4

---

ing intravenous contrast. Comparison made to a prior study from 12/17/99.

13. Mucopolysaccharidoes [MPS] is a genetic lysosomal storage disorder caused by the body's inability to produce certain enzymes that break down and recycle cells after the cells die resulting in the storage of these cell deposits in virtually every cell of the body. As a result of the storage, cells do not perform properly and may cause progressive damage throughout the body, including the heart, bones, joints, respiratory system, and central nervous system. While the disease may not be apparent at birth, the signs and symptoms develop with age as more cells become damaged by the accumulation of the cell deposits. National MPS Society, Inc., *available at* http://www.mpssociety.org/index.html (Visited May 20, 2004).

14. Skelaxin is indicated as an adjunct to rest, physical therapy, and other measures for the relief of discomforts associated with acute, painful musculoskeletal conditions. PDR.

15. Naprosyn is a nonsteroidal anti-inflammatory drug used to relieve the inflammation, swelling, stiffness, and joint pain associated with rheumatoid arthritis, juvenile arthritis, ankylosing spondylitis, tendinitis, bursitis,

and acute gout. It is also used to relieve menstrual cramps and other types of mild to moderate pain. Ulcers and internal bleeding can occur without warning from use of this drug. Common side effects may include abdominal pain, bruising, constipation, difficult or labored breathing, dizziness, drowsiness, headache, heartburn, itching, nausea, ringing in ears, skin eruptions, and swelling due to fluid retention. *Naprosyn, available at* http://www.healthsquare.com/newrx/nap1283.HTM (last visited May 20, 2004).

16. Ultram, a centrally acting analgesic, is used for pain relief for moderate to moderately severe pain. Seizures have been reported in patients taking Ultram. It can cause malaise to the body as a whole. It can cause anxiety, confusion, coordination disturbance, nervousness, and sleep disorder. It can cause urinary frequency and retention. It can cause depression. *Physicians' Desk Reference*, (Medical Economics Company, Inc., Inc. 56rd ed 2002). [hereinafter PDR].

17. Dr. Schulman conceded she was not provided with any treatment notes or MRI results. Her opinion differs drastically from that of Dr. Still's May 17, 2000, opinion based on examination **and MRI results.**

hours based on the abnormalities previously described, including the abnormal sensory examination and positive straight leg raise. The claimant could sit 6–8 hours with normal breaks in an eight-hour workday. No assistive devices are used. The amount of weight the claimant could lift or carry would be limited to 10–20 lb. frequently, based on the abnormalities previously stated. Regarding postural limitations with bending, stooping, and crouching, she is capable of doing these activities occasionally. There are no manipulative limitations with reaching, handling, feeling, grasping, or fingering. There are no visual, communicative, or workplace environmental limitations.[18]

The Administration also had a comprehensive psychological evaluation performed on plaintiff by Samuel J. Popkin, Ph.D. on June 7, 2000. His evaluation notes plaintiff has a remote history of some form of psychotic episode but that she was "psychiatrically stable now." The doctor notes she had difficulty with adjustment to back surgery and chronic LBP. The severity of psychopathology observed was low. Her prognosis was favorable.

Jack L. Zaremba, M.D. performed an independent examination on plaintiff at the request of counsel April 3, 2001. She arrived using a right leg velcro splint and carried a cane in her left hand. She reported pain and weakness causing her leg to give way, particularly with prolonged standing or stepping the wrong way. Examination showed her ROM markedly reduced in the back with complaints of pain in all directions. Her gait and station were abnormal. It was necessary for her to use the cane to dismount from the examination table. She was unable to perform squat or heel/toe walk. She had decreased strength in the right lower extremity with some mild wasting. She was unable to perform a seated leg raise. Mild atrophy was evident in the right lower extremity. The doctor's diagnoses follow:

Chronic low back pain with a failed back syndrome,[19] S/P microdiskectomy in 1999 with persistent lower back pain, radiating down the right leg with sciatic distribution to the point where the leg will still give way on occasion. She reports falling 2 to 3 times over the past 3 to 4 months, as recently as 3 days ago. She requires assistance for activities of daily living with her two adopted children, 8 and 10 years of age, who help her around the house with regard to her cleaning, cooking and also laundry activities. She states that her pain is persistently about 5 on a scale from 1 to 10. With minimal activity it increases to 8–9, where she has to stop her activity and/or lie down. The medications she takes do cause somnolence and drowsiness during the course of the day.

On the "Physical Capacities Evaluation" form Dr. Zaremba completed he opined plaintiff is able to lift and/or carry five pounds or less occasionally. During an eight-hour workday she can sit two to three hours and stand one hour. He noted plaintiff needs a leg brace to ambulate even minimally.[20]

**18.** Compare her evaluation with the requirements for sedentary work found at n. 22 on 11–12.

**19.** Failed back surgery syndrome (also called FBSS, or failed back syndrome) is a misnomer since it is not actually a syndrome but a very generalized term often used to describe the condition of patients who have not had a successful result with spine surgery. There is no equivalent term for this in any other type of surgery. *Failed Back Surgery Syndrome: What it is and how to avoid it, available at* http://www.spine-health.com/topics/surg/failed_back/failed_back01.html (visited May 21, 2004).

**20.** The ALJ discounted Dr. Zaremba's opinion stating that the "Physical Capacities Evaluation" was "unsupported by objective, credible evidence of record and (was) primarily based

Dr. Zaremba also completed a "Clinical Assessment of Pain" form in which he opined that plaintiff's pain is present to such an extent as to be distracting to adequate performance of daily activities or work. Physical activity increases the pain to such a degree as to cause distraction from or total abandonment of tasks. Side effects of medication totally restrict plaintiff from being able to function at a productive level of work. She does have an underlying medical condition consistent with the pain she experiences.[21]

From the above the ALJ found that plaintiff has chronic back and right lower extremity pain but that she is not disabled. He concluded she is able to perform sedentary work.[22]

"The function of a reviewing court is limited to determining whether the Secretary's findings are supported by substantial evidence considering the evidence as a whole." *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir.1978). "Substantial evidence is more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842, 852 (1971). The court is still responsible for scrutinizing " 'the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding.' " *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir.1983) (quoting *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir.1982)). The Eleventh Circuit has gone on to state the following:

Our limited review does not, however, mean automatic affirmance, for although we defer to both the Secretary's fact-finding and her policy judgments, we must still make certain that she has exercised reasoned decision making. To this end, we evaluate the Secretary's findings in light of the entire record, not

upon subjective allegations, which I consider exaggerated."

21. The ALJ discounted this opinion stating, "his opinion (the doctor's) that the claimant experiences disabling pain and limitations is contradicted by other reliable medical evidence from other examining and attending sources familiar with Ms Edwards' condition."

22. A discussion of "DETERMINING CAPABILITY TO DO OTHER WORK—THE MEDICAL–VOCATIONAL RULES OF APPENDIX 2" is found in SSR 83–10. Authority for the material in SSR 83–10 is found in Sections 223(d)(2)(A) and 1614(a)(3)(B) of the Social Security Act; Regulations No. 4, Subpart P, sections 404.1505(a), 404.1520(f)(1), 404.1545, 404.1560–404.1561, 404.1563–404.1569, and Appendix 2; and Regulations No. 16, Subpart 1, sections 416.905(a), 416.920(f)(1), 416.945, 416.960–416.961, and 416.963–416.969. Under the Glossary sedentary work is defined in the following manner:

1. *Sedentary work.* The regulations define sedentary work as involving lifting no more than 10 pounds at a time and occa-sionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

"Occasionally" means occurring from very little up to one-third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8–hour workday, and sitting should generally total approximately 6 hours of an 8–hour workday. Work processes in specific jobs will dictate how often and how long a person will need to be on his or her feet to obtain or return small articles.

only that evidence which supports her position.

*Owens v. Heckler,* 748 F.2d 1511 (11th Cir.1984).

The court must further consider whether the decision of the Commissioner contains a material error of law. In *Walker v. Bowen,* 826 F.2d 996, 999 (11th Cir.1987), the court held:

> Despite this limited review, we scrutinize the record in its entirety to determine the reasonableness of the secretary's factual findings. *Bridges,* 815 F.2d at 624; *Arnold v. Heckler,* 732 F.2d 881, 883 (11th Cir.1984). No similar presumption of validity attaches to the Secretary's legal conclusions, including determination of the proper standards to be applied in evaluating claims. *Wiggins v. Schweiker,* 679 F.2d 1387, 1389 (11th Cir.1982).

Having evaluated the evidence, the court holds that the evidence does not support the decision denying disability benefits. Improper legal standards were applied. 1) The ALJ ignored the pain standard established by the Eleventh Circuit. 2) The ALJ failed to properly credit the opinion of treating physicians.[23]

■ Whenever a claimant asserts disability through testimony of pain or other subjective symptoms, the Eleventh Circuit standard requires:

1. evidence of an underlying medical condition and either

2. objective medical evidence confirming the severity of the alleged pain arising from that condition or

3. that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.

*Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir.1991). See also *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991); *Lamb v. Bowen,* 847 F.2d 698, 702 (11th Cir.1988); *Hand v. Heckler,* 761 F.2d 1545, 1548 (11th Cir.1985).

More recently, in *Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir.2002), the court announced the pain standard as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

■ In *Brown v. Sullivan,* 921 F.2d 1233 (11th Cir.1991), the court said:

> The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability. *Hale v. Bowen,* 831 F.2d 1007, 1011 (11th Cir.

---

**23.** The law is clear that the ALJ must give substantial weight "to the opinion, diagnosis, and medical evidence of the claimant's treating physician." *Wiggins v. Schweiker,* 679 F.2d 1387 (11th Cir.1982); *Smith v. Schweiker,* 646 F.2d 1075 (5th Cir.1981). The Eleventh Circuit has gone further to hold that where the Secretary ignores or fails to properly refute a treating physician's report, the findings in that report are to be accepted as true as a matter of law. *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir.1986). The Secretary must give "explicit and adequate reasons for rejecting the opinion of the treating physician." *Elam v. Railroad Retirement Board,* 921 F.2d 1210, 1215 (11th Cir.1991).

Furthermore, the regulations give preference to the opinion of the treating physician. 20 C.F.R. § 404.1527(d)(2). *See. Lewis v. Callahan,* 125 F.3d 1436 (11th Cir.1997) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error.") (citing *MacGregor,* 786 F.2d at 1053)).

1987); *MacGregor,* 786 F.2d at 1054; *Landry v. Heckler,* 782 F.2d 1551, 1552 (11th Cir.1986). If the Secretary decides not to credit such testimony, he must discredit it explicitly, *MacGregor* at 1054, and articulate explicit and adequate reasons for doing so. *Hale,* 831 F.2d at 1011. Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Cannon v. Bowen,* 858 F.2d 1541, 1545 (11th Cir.1988); *Hale,* at 1011; *MacGregor,* at 1054.

*Brown v. Sullivan,* 921 F.2d at 1236. As in *Brown,* Ms. Edwards's subjective testimony in the present case is well supported by objective medical evidence (MRI, decreased ROM, tenderness, abnormal gait, decreased strength, atrophy, positive straight leg raise) of underlying conditions which could reasonably be expected to produce her pain. Medical evidence establishes her pain testimony is credible. Treating physicians believe she has suffered and continues to suffer with pain. The ALJ's failure to articulate explicit and adequate reasons for rejecting this testimony requires that it be accepted as true. *Brown v. Sullivan,* 921 F.2d at 1236 (citing *Hale v. Bowen,* 831 F.2d at 1011).

The opinion of the Commissioner is due to be REVERSED. An order consistent with this opinion is being entered contemporaneously herewith.

### *FINAL ORDER*

In conformity with and pursuant to the memorandum opinion entered contemporaneously, it is

ORDERED, ADJUDGED and DECREED that the decision of the Commissioner of Social Security be and it hereby is REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be granted the benefits claimed.

It is FURTHER ORDERED that the Commissioner withhold from payments which he may determine are due plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of section 206 of the Social Security Act, as amended 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fees to be allowed plaintiff's counsel for services rendered in representing the plaintiff in this cause.

It is FURTHER ORDERED that pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby GRANTED an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***